Case number 17-3093, United States of America, appellants v. Joseph Daniel Hallford, forward. Mr. Lanitz for the appellants, Mr. Kramer for the athlete. Good morning and may it please the Court, my name is Dan Lenners and I represent the United States. If I might please request three minutes for rebuttal. The purpose of the Miranda inquiry is to allow law enforcement officers to make real-time judgments about whether the objective circumstances of an interview pose such a threat of governmental coercion that a reasonable person would not feel free to terminate the interview. In this case, the district court turned that objective analysis on its head, relying on facts unknown to the officers at the time of the interview, conduct by third parties that preceded the interview and were separate from it, and the defendant's own subjective state of mind to find that Hallford was in Miranda custody at the time of the interview in question here. Before we start on that question, I have a different question for you. In order to get here, we have an interlocutory appeal, you have to file a certificate, right? That's correct, Your Honor. And in the Bookhart case, the government represented that it would from now on, now being 2002 on, it would always file that certificate at the same time it filed its notice of appeal. Are you familiar with that? I was not familiar with that, no, Your Honor. But that was not done here. This was not done until about two months later. Right. That's correct, Your Honor. And we said in that case that we would take that into consideration, although we didn't regard this as jurisdictional, it was a matter of our discretion, and that we might well dismiss an appeal if the government didn't file the certificate right away, if it didn't treat this question with seriousness. And given the fact that you represented the last time you were here, that you did not need the statements of the defendant, why should we not dismiss it? And you've obviously changed your mind about that. Why should we not dismiss the case now? I think there are a variety of reasons why the Court should not dismiss the case. We did file the certificate with the district court before filing our brief in this case. Right. But we said that you ought to be filing it at the same time as the notice of appeal. So now it's several months, two months, I think, afterwards before you did that. It was, except the court's representation, that was approximately two months. It was after I became involved in the case and realized that the certificate needed to be filed. We ensured that it was. I'm not blaming you personally, just to be clear about that, but you do represent the United States and it is a single entity. I understand, Your Honor. Additionally, the circumstances of the case have materially changed since we made that representation during the first appeal. During the first appeal, there were a number of charges at issue, including D.C. gun charges, that did not require proof of the defendant's specific knowledge of the firearm's capacity as firearms. Those charges were voluntarily dismissed by the United States, and the only two charges remaining do require proof of the defendant's specific knowledge that he consciously possessed what he knew to be a destructive force. Well, you didn't indicate that the first time. You said that the charges could be proven without the statements. You didn't say some of the charges could be proved without the statements. You said the charges could be proven. I understand that that was the representation the government made during the first appeal. The government's view is that now that the firearm's charges have been dismissed Who dismissed them? Who, when you say voluntarily, they were dismissed by the United States, right? Correct, Your Honor. Well, then you put yourself into the position you're in. It's not as if some hand somewhere puts you into that. You put yourself into that position. It's true that the United States voluntarily dismissed those charges, but it does change the nature of the proceeding in that the only two remaining charges require the specific knowledge, and given that the Molotov cocktail at issue here was not entirely constructed, the defendant's statement during the interview that he had a Molotov cocktail in his car is significant proof that he consciously possessed what he knew to be a destructive device. And so the government does believe that the certification was appropriately filed. If not, at the time we represented in Book Night, that we would file it. And the defendant has never relied on this non-jurisdictional issue in this case to argue that the appeal should be dismissed. So I don't believe it would be appropriate for the court to do so sui sponte. All right. Well, however this comes up, again, I'd like a representation from the United States that will do what it said in Bookhart, that from now on, it will make the certifications at the same time as the notice of appeal. I will ensure that my chief of the appellate division. Maybe someone could send us a letter to that. Send the court a letter to that. I will make a note of it, Your Honor. As to the merits of the case, the district court erred as a matter of law in concluding that Holford was under Miranda custody at the time of the interview here. The district court inappropriately relied on, among other things, Holford's interactions with doctors and nurses, both at the George Washington University Medical Center and at the United Medical Center well before the interview at issue here. Those doctors and nurses' statements to Holford are not properly attributable to the government because there was no agency relationship between those doctors and nurses and the government. In addition, the court relied on Holford's. Do you dispute that the, just generically, in analyzing custody or not, that we start at the time the person is told they're going to be questioned, or do we start at the time they're actually in the room and the questioning starts? When do we start the custody inquiry? I think it depends on what the governmental agents know, because the point of Miranda is that they can evaluate the objective services. We're asking not what the reasonable officers thought, but what the reasonable person thought, the person who's being questioned. Correct? What a reasonable person would think, given the governmental coercion. First of all, the person doesn't know what the officers, what they do or do not know. And so I'm asking just temporally, in any case, when we're trying to decide whether someone was in custody or not, you call a lot of things background facts. I'm trying to figure out when they stop being background and they start being relevant to the custody inquiry. And so the first dividing line I'm suggesting to you is when the person is told they're going to be questioned. Does that count? Does that time count? Not if the officers don't know about it and they are told by third parties. Why does that affect the reasonable person's understanding? It affects whether or not there's governmental coercion. Those statements are not attributable to the government, because those statements are not made by government actors and the officers aren't aware of them, and so then can't take them. So the district court here found that the officers had to have known, because there's no reason otherwise that the medical center employees would have told Mr. Halford that he had to go to the questioning and he had to do it. He had to go be questioned by the officers and he had to do it right then. So if you lose that fact finding, so the officers somehow communicated to the medical center employees that he needed to question him and they needed to question him now, do you lose? I don't believe so, Your Honor. Let me ask you a different way. Is that a relevant fact for the custody analysis? Only if it's known to the officers and the third parties. I've given you the situation here, and that is the officers told medical center employees we want to talk to him, and from that conversation the medical center employees understood that the officers wanted to speak to him and they want to speak to him now. I don't believe under those circumstances those statements are properly considered as part of the analysis, because but-for causation is not enough to create an agency relationship. I don't want to talk tort standards here. I want to ask just structurally how on earth can it not be that the circumstances under which you're told to get yourself into an interrogation area are categorically irrelevant to the custody inquiry? In J.D.B., the Supreme Court made clear that a child's age is only relevant to the inquiry so long as it's known to the officers or should be known to a reasonable officer. Right. Under those circumstances, the child... You've lost the fact finding. If I assume you've lost the fact finding here, that the officers' statements communicated to the medical employees, so they know what they told the medical employees, and then they know the person that immediately appeared. They don't know what the medical employees told Holford to get him to the interview. And so that's why it's categorically irrelevant to the person being questioned, the suspect. It's unreasonable for the suspect, or it's categorically off limits for us to factor into the suspect's mindset how the suspect was taken into the room? Yes, Your Honor, and there are multiple courts that have found that. The Eighth Circuit in Goudreau, his supervisor told him, you have to go meet with the agents now. The employee understood that as a command, and the court nevertheless said that's irrelevant to the Miranda custody inquiry because that statement was not attributable.  Is there anything from the Supreme Court that says categorically we do not start the custody analysis until you're actually in the room being questioned? Nothing that says you don't start it until you're in the room, but the court has focused on the objective circumstances known to the officers. A child knows his own age. And under my question, the officers know because they're the ones who told the medical center employees to get him there now. The court didn't make that finding. Okay. If under my hypothetical, if that's how, if that's what the officers did, would that be relevant or not? Your argument seems to be it's not relevant, so it doesn't matter if they actually said get him, bring him here now. Is that your position? If the officers actually said that, then they would know that they said that and that that led him to being brought to the room. So then that would, their officers' statements that they know about would properly be considered as part of the Miranda custody analysis. But those aren't the facts here. The court found that the reason the medical center's employees said that to him was because that's what was communicated to them by the officers, and we don't consider it? The court never found anything about what the officers said. The court reasoned backwards and sort of said, you know, raise it to low court or because these nurses said that Hartford had to go now. That's not what he said. He said the only basis under which they would have told him that he had to go when he had to go now was because that's what the officers said. But the officers didn't even communicate with those nurses. The officers are right. That's not the point. I think it is clearly erroneous under these facts, given the only test. That's a different question. I'm trying to understand. You say the facts don't matter, do matter if the officers were aware of them and don't matter if they weren't aware. That's your position? Yes, Your Honor. It doesn't matter? Otherwise, the circumstances are utterly irrelevant? Yes, Your Honor. Okay. And if they – what does – do they have to know or do they have to – would a reasonable officer be aware that when they tell hospital employees we need to talk to somebody, we'd like to talk to them now, and the hospital employees act on that? Does that matter to the analysis or not? The Supreme Court has said what an officer knows or a reasonable officer should have known. And so I think that's the controlling test here. But regardless, there's no evidence that the officers knew what the nurses said. To the contrary, they testified they had no idea what the nurses said. And the only testimony, the only facts about what the officers said when they arrived at the hospital was testimony from Agent Fox, which is that they asked to interview Holford. And so any finding that the officers said something upon arrival at the hospital that caused the nurses to tell Holford he wasn't in time. Did they make clear they wanted to talk to him now while they were there? That's not what the officer testified he said. He said they arrived at the hospital and asked to speak with Holford and that security personnel took them up to the fourth floor and the officers found Holford arriving at the interview room. That's the only evidence we have as to what the officers said. Holford testified not only did the nurses tell him you have to talk to the agents. He testified that they identified them as FBI agents and Secret Service agents, which is wrong. And he said he was told that he wasn't allowed to have a lawyer present. And there's no testimony whatsoever that the officers said anything about attorneys. And so to the degree the district court seeks to attribute those statements to the officers' interactions at the front desk and then to consider them as part of the Miranda analysis, it's both clear error and legal error to consider those statements. And once you do away with those statements, this is an entire – from the viewpoint of Agent Fox, who conducted the interview, this is an entirely innocuous interview. It lasted approximately an hour. The defendant was never restrained. It was in conversational tones. The defendant was – I'm talking about the officer's perspective, but am I wrong? The test is what a reasonable suspect would think, a reasonable person being questioned would think. Given the objective circumstances of the interview, and the point is that the officers have to make an on-the-scene, real-time judgment, given the objective circumstances that they know, as to how a reasonable person would interpret those circumstances in the threat of governmental coercion. So if the officers don't know about something, they can't take that into account in determining whether to give Miranda warnings, which is why JDB makes clear that the child they tested— If someone's in state police custody, and then the federal agents show up and say, hey, we'd like to talk to him, and the state police bring them into an interview room with the federal officers, are there cases talking about whether that counts as continued custody status or how the fact that they're already in the custody of the state factors into whether they're deemed to be in custody for purposes of Miranda when they're questioned by the federal agents? Do you know of cases on that? I haven't seen cases directly analogous, Your Honor. What comes to mind are cases where a defendant is already incarcerated on separate charges. And I'm talking about that. It's got to happen, right? You go find some states, pick someone up, finds out there's a federal issue and has to go in to question him. There's no cases at all that you're aware of on that? I'm not going to represent there are no such cases that I'm aware of. I've read a lot of Miranda cases in preparation for this argument and for writing our briefs. I didn't identify that factual circumstance. What do you think the answer is? Do you think the fact that you're in state custody and then you're brought into a room to be questioned by federal agents about presumably separate federal offenses? So I think there are two possible approaches. One, the court might analogize it to the Schatzer or House situation where the defendant's already in separate custody, and the question is whether or not there are additional restraints on his freedom imposed by the federal officers that would render this a Miranda custodial interview. Or the court may look at the state police as agents of the federal government in that circumstance, depending on the test of the federal government, whether the federal government knows. Would the officers have to know that, or would it only be agents if the federal officers asked? If they asked him to bring the person in for questioning, is that enough to make it agency? Would you mind bringing him here for us so we can talk to him? The agency test requires not only knowledge on the part of the federal government, but also more than mere acquiescence in the agent's actions, and it requires that the agent be acting for the purpose of assisting the federal government. So I'm asking the question. When they say, would you bring him into the room? We're here, we'd like to talk to him about some federal offenses. Would you bring him into the room so we can talk to him? I think it would depend on whether or not the state police were intending to assist the federal government or were acting in some other capacity. Is there not a state police intent to assist? That would be part of the agency test. Here, there's no evidence that the nurses were acting as agents of the federal government. If you're analogizing. They were intending to assist. They certainly were intending to assist by bringing him to you. Not to assist the law enforcement function of investigating his statements. Well, of course they were. There's no evidence that the nurses were doing this out of intent. You wouldn't bring him there for medical treatment. He was in the hospital for medical treatment. There's no evidence in the record that the nurses' subjective intent was to aid the federal government as effectively state actors. Nor is there any evidence that officers Fox and Maher knew what the nurses said to Halford and did anything more than acquiesce in them bringing Halford to the interview room. So under these circumstances, I think that it is legal error to consider those interactions, as well as the prior interactions where Halford was brought from one hospital to another and what was told at George Washington University Hospital. And once you put those aside, I think as a matter of law, Halford was not in custody. If there are no further questions. Thank you. Thank you. Good morning, Your Honors. A.J. Kramer on behalf of Mr. Halford. Chief Judge Garland, I'm both painfully and embarrassingly aware of Bookhart since I argued it. I think the statute, as the government did, you're absolutely correct, the government promised it would file simultaneously from then on. The statute doesn't require it, although the government promised it. And as I read the case law, looking behind the certificate, the government's representations in the certificate is not permitted. There was the statement in the prior case by the government that they did not need the evidence to prove the charges, but I think I understood that because the government had dismissed the charges in the light of a Second Amendment motion, that it was just now the federal charges. So clearly I should have filed a motion under Bookhart, but what the statute, I guess, does not require it is the simple answer. Thank you. The government turned this case on. The government is the one who turned the case on its head in its argument. It said Miranda warnings are for law enforcement officers. Miranda warnings are not for law enforcement officers. Miranda warnings are for people who are being questioned, the suspects. They're to ensure that they understand the situation. And I noticed the government didn't mention Howes v. Fields in its case. The government just wants you to ignore that case. Where the Supreme Court said twice, the most important, they said at the beginning of their analysis, most important Respondent was told at the outset of the interrogation and was reminded again thereafter that he could leave and go back to his cell whenever he wanted. And then they concluded the analysis by saying, taking into account all the circumstances, including especially the undisputed fact that Respondent was told that he was free to end the questioning and return to his jail cell, we find that he was not in custody. And they just want you to ignore those statements in Howes v. Fields, that that was the most important fact in that case. Judge Mollett, the... But can I ask about... Yes. The problem in Howes was there were so many factors going in the other direction already that that made it so important. That is, this was one where the Respondent didn't invite the interview, was not advised he was free to decline to speak. It was a five- to seven-hour interview. The Respondent was... The deputies were armed. They spoke in a sharp tone. At least those latter things are not the case in this case. Well, but the factors they pointed out in Howes, the three factors they pointed out for consideration, are much more compelling in this case about being yanked out of... away from friends and family. Mr. Halford from Alabama, that the agents knew, was yanked out and sent to United Medical's UMC from GW Hospital. The other factors they talk about are the... whether he thought that the officers were his ticket out or had some influence over his custody and whether they might... he would be susceptible to talking to them because he thought they could help with his release. None of those three factors, none of them were present in Howes v. Field. All of them are present in Mr. Halford's case. Well, let me ask about a few facts that the Court relied on that I'm a little uncertain on. So one is this last point you made, which is that an objective person in his position would have thought... it has to be an objective position, it can't be what he thought, right? We agree with that. About whether the officers could help him get out, right? Yes. Now his testimony is all about I think or I thought. It's not about objectives. So we have to impose an objective test on that. And as the District Court's own opinion reflects, he was told that he was there because of a court order. That's why he was in the hospital, not because of the Secret Service or anyone else, but there was a court order. And that was an involuntary commitment because they thought he had a medical problem of either physical or mental nature. So given the fact that he was expressly told by the nurses and the Court accepted that, that it was a court order, why was it objective in that circumstance that he would think that the Secret Service could get him out as compared to these other cases where courts have said it wasn't objective? Well, I think there's a simple answer to that. First of all, he said, I was told there was a court order, but I didn't really understand why. So he said I didn't understand why. I really don't understand why also doesn't matter. This is an objective test, right? You told us that. So it doesn't matter whether he really understood. And there was no testimony of what he was told about the court order for an objective person. That means you have to stay in for 24 hours or 48 hours and you can't be released until you go to a courtroom. There's no testimony about that at all. So an objective person would think, I'm in here under a court order, now the Secret Service is here, and just as he testified, once they hear that I'm not a danger, that I don't present any danger to anybody, they'll make sure they'll help me get out. I don't think from an objective viewpoint that that's unreasonable at all. In fact, I think just the opposite is perfectly reasonable, as the district court found. How about the district court's finding that the officer was armed when the defendant's testimony was that he didn't see the gun until after he had answered his questions? He was armed. There was no question about that. But again, the question is what is seen by the defendant, right? And I think that's, frankly, people probably, it's probably reasonable to assume, I think, that Secret Service officers are armed. That's a different question. First of all, they were in casual clothes. They weren't in uniform. And the court made a finding that they were armed, and the facts, as stated by your client, is that he didn't notice that until after he had answered the questions. So the fact that they were armed, which goes to the coerciveness, could not have gone to the coerciveness, because he didn't know about it until he had already. What he said was I didn't see a gun until he stood up. Right. But it would be perfectly, that's a subjective fact, of course, which your Honor has said is irrelevant. It's not subjective that that was the time he saw the gun either. Well, it would be. The gun was either visible or not. That's a fact in the world. Right, but it would be perfectly reasonable for a person to think that two Secret Service officers are armed. Well, if that's the case, that would be true in every single circumstance in which law enforcement questions, and we know that's not correct. Otherwise, the armed nature of the officers would be an irrelevant factor. It would just always be assumed. No, because they could go in without their weapons. They could be unarmed. That happens all the time. You don't think, yes, they could go in without their weapons, but under what you just told me, a reasonable defendant would assume they were armed whether he saw their weapons or not. That's true. Whether they were armed or not. They could objectively stand up and show. They could say we don't have our guns. They could say we're unarmed. Why would a defendant believe them? I mean, your position is. They could just show that they were. Do the officers have to strip in order to establish that they're not armed? That's not what the cases say. I'm asking you whether the district court made a clearly erroneous factual finding and how important that is to us. No, it's not. He found that they were armed. Yes, but as part of the coercion, which had already, if there were coercion, it stopped by the time, by that point. He had already, at the moment at which he discovered it. Well, I have to say two things. First of all, it was not clearly erroneous because it was correct. It was true. They were armed. Second of all, I think it's probably the least important factor in this particular case. Because he was told before he went into the room, and Judge Millett, it has to start with the directions they're giving. Before we get to that point, because I'm going to ask you about that too, but I've got your point on this, but it was a good pivot. Now, one more fact. The court relied on the fact that he had no underwear on and wasn't wearing anything under his gown. Right. Well, the exhibit shows that he was. What do we do about that? The exhibit shows something. It's not clear what it is. Well, if there is something under the gown, I can pick it up and hold it. You've seen it, right? It could be. Let me put it this way. There were two hearings. What am I supposed to believe, my lying eyes or what? Well, there were two hearings. There were two hearings. The agents never testified anything to the contrary, that all he was wearing was the hospital gown. In fact, there was questions at the hearing about that. What's the exhibit? The exhibit, I understand, shows something. I have no idea how far that, whatever that is, goes down. What he said was, I was naked under the gown, and that could be that he had some kind of T-shirt on or something. But it was undisputed. The agents never said anything different. The doctor never said anything different. He said the gown was buttoned in the back, but it's actually buttoned in the front. He said what he actually said was it was one of those gowns that ties in the back. The government plays fast and loose with the facts in this case. I'm only looking at the picture. I'm believing my eyes. I'm not believing either set of testimony for the moment. What he said was it was one of those gowns that ties in the back. No, the court relies on the fact that it was an open-backed hospital gown. That's how the court describes it. Was that clearly erroneous? No. Well, it depends whether that means it was open in the back or it was one of the open, the back of the gown was open. I mean, again, I think that's not a crucial fact in this case. Okay. What the crucial fact is is he was told that he had to go to this room, that he had to submit to the interview, that he had no right to have a lawyer, that he could not refuse to submit to the interview, and that they escorted him to the room, sat him down. He was surrounded by the agents and hospital staff. And Judge Millett, that has to go back to what the agents said at United Medical Center. It was perfectly reasonable for the district court. Well, they can't have a lawyer, Hart. How could that be tied to the agents? They said you can have a lawyer when you have your hearing on involuntary commitment. But is there any basis for believing that the officers said, we want to talk to him now and he can't have a lawyer? I shouldn't see any basis for inferring that lawyer part out of it. Well, there's no reason they would have said it except for what the agents portrayed. And the agent, Agent Fox, gave different testimony about what he said. These folks in the medical center must know, have familiarity with the involuntary commitment process. And so he's asking for a lawyer, which may have meant that that happens when you have your involuntary. That's separate from this. That goes with your involuntary commitment process, as opposed to they want to talk to you, they want to talk to you now. Right. But he said, can I have a lawyer for this, too? I'd like to have a lawyer for this. And they said, no, you'll get one later. This testimony, Fox testified to different versions of what he said when they went to United Medical Center. He said, we essentially identified ourselves as Secret Service. We were there to speak to a patient, Mr. Halford, who was transferred from DGW. And we were told to wait. That says nothing about asking to talk to Mr. Halford. The only, which was, it was perfectly reasonable for the district court to conclude that the only reason the United Medical Center people told Mr. Halford that was based on the, either what the Secret Service agents said to the people who were, that they first had contact with, or the implications of the way they said, we're Secret Service, we're here to interview Mr. Halford. And it could have all been taken care of had they, as they did in Howes v. Field, said, you can leave at any time, this is voluntary. That could have taken care of it. They could have said, what did you? Could he have left at any time? Could he have left at any time? It sounded like, and maybe I wasn't reading it accurately, that he wasn't allowed to move around this part of the hospital on his own. He had to be escorted. Not only did he have to be escorted, there were key cards that had to be swiped. Well, not to go out of this lounge area. You couldn't get out of the lounge area even without a key card swipe. Back to his room. Okay. He wouldn't be afraid to leave under any circumstances. He couldn't. By himself. Right. That was undisputed, that he could not just get up and leave and walk away. Because the doors, you had to have a key card swipe to get back to his room. I think they swiped it at least twice on the way from his room to the- That was true in Howes also. They were locked into the place where the questioning occurred. He could only get back to his cell if they let him go back to his cell, and that would be the same here. Well, what they said in Howes, the door was open at times in Howes. In order to get to the conference room, Field had to go down one floor past a locked door that separated two sections of the facility. Yes, and he would have had to have been escorted back to his cell by an officer. Right. And the same would have to be here. Well, first of all, he was surrounded in the room by a number of people. In his chair, in the chair he was sitting in, there were the two officers in him, three hospital staff, and others sitting in the room. The government agreed that the staffers took him to the room, sat him down. He was essentially surrounded or flanked by at least four people in a relatively small room. That's on August 27th of 2014 at pages 40 to 41. He was escorted to the room, and the government agreed to those facts. So you think he was more constrained in the hospital than the prisoner was in Howe? Yes, absolutely. I mean, they just let prisoners wander around, and if he made a bolt out the door, that would have been fine. Well, they let them wander around in non-secure areas. It was secure. He had to go through a lot of doors. But they don't let people in. The testimony was to even get out of the corridor, there was a key swipe. I think it was much more secure at United Medical Center than most prisons, although somebody wandered into his room and took a nap at one point. But it seems to me, I think they're, you've got to remember, he was constantly asking to be released from there. So they were, and when the Secret Service officers came, he thought, this is how I can finally get released. He had been consistently asking about that. Can I ask a question along the lines that you were discussing with Judge Millett, and that Judge Millett was discussing with opposing counsel? So what are we to, the district court in this case rejected the idea that circumstances had to be limited to those that were known by the officers. And I'll add to that, objectively known by the officers. And you're resisting that point. And what are we to make of what the Supreme Court said, both in JDB and in Yarborough, that by limiting analysis to the objective circumstances of the interrogation, and asking how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leaving, the objective test avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect. Officers are not required to make guesses as to circumstances unknowable to them at the time. But I think what the district court was perfectly reasonable finding of fact was that these facts were known to the officers. They went and told the people at United Medical Center that they were there to talk to Mr. Holford, and the people at United Medical Center relayed that. Whatever they said led the people at United Medical Center to tell Mr. Holford that it was mandatory. He could not have it. I understand that point. But what about the other things, the things that happened at the first hospital, the transfer from the first hospital to the second hospital under restraints? Those things were not known or really knowable by an objective officer. Well, they were clearly knowable. They could have asked. They asked a lot of questions. Well, that may be right, but it says officers are not required to make guesses as to the circumstances. They didn't have to guess. They asked a lot of questions at GW Hospital. So they were responsible for finding out all of the circumstances before he got to the room that they were in. I understand your other point that they should, district court inferred that they were the one who transmitted the message. Whether that's a reasonable inference or not, we'll put to the side just for the moment. But the other things that happened outside of any action by them, even outside of the day on which they arrived. I don't think that they were tasked with knowing that he was transported in restraints from GW. I'll go that far. Really? I would have thought that the one thing law enforcement generally would know is that someone who's being involuntarily committed, as I think that would be a danger to himself. It wasn't totally clear. It's going to be in restraints. They may not know statements that were made, but the basic process of, here's how we transport somebody who's being involuntarily committed, and here's how someone is processed when they arrive, I would have thought law enforcement knows. It's not like this is the first person who's ever been involuntarily committed in Washington, D.C. I don't disagree with you, obviously, but I have to say it's not in the record. But I think it's one way or another about that. So there was no questioning of the officers as to what was knowable generally about this process? Yes. There was nothing in the record about that. I would say this, that the officers could have alleviated this whole thing by doing one of two things that they did not do. They could have actually done a third thing, too, that would have helped. They could have said to Mr. Holford at the very beginning of the interview, as they did in House v. Fields and as they did in the middle of the interview in House v. Fields, this is voluntary, you can leave at any time. That would have taken care of it under House v. Fields, probably, along with the other facts. But they also could have said to Mr. Holford, what did they tell you about coming here? How did you get into the room? They wanted to seemingly go on a deliberate ignorance avenue of trying to not know how Mr. Holford got up, got to the room, despite the fact that it was their actions that got Mr. Holford to the room. I'm trying to understand whether you want to rest on that alone, or are you – there are a couple of things that you're arguing. One is, I think, that the district court assumed or found that the staff acted at the behest of the Secret Service, and then you point to two critical things. He was told that he had to go to the interview and he could not have a lawyer. Right. So that's one line, and it's only by inference that the district court is drawing that conclusion. There are no specific facts that the district court is looking to. No testimony, right. Right. Then your argument switches as if to suggest, well, you know, this is a coercive setting because Secret Service knows if he's in this institutional setting, he is restrained in ways that he would be nervous about, and so they are obliged on the fields to reassure him as soon as they saw him. Are they two separate theories? Are they going together, or what? No, they're going together, definitely. You've got to have that inference? We've got to accept the district court's inference? No. I don't think you have to accept it. No, no, I'm sorry. I'm sorry. I see where it's going. I'm sorry. There are two lines here. You're absolutely right. I think you look at all the facts. This Court said in the first Halford appeal, you look at all the facts to determine. Clearly, there was no reason to remand it to the district court. What the government is arguing is nothing different than it argued on the first appeal, yet this Court remanded it specifically for the Miranda finding that the district court had made originally. Now there's more facts from Mr. Halford's testimony, undisputed facts. In fact, the district court found that Mr. Halford not only was credible, but to the extent there was any difference between his testimony and that of the agent, that Mr. Halford's testimony was to be credited and that the agent was not credible. So I think that it's a perfectly reasonable inference that the agent said something to the people at United Medical Center that caused them to go tell Mr. Halford, you have to go to this interview right now. You have no choice, and you can't have a lawyer. That's a perfectly reasonable inference, and it is an important fact, because that's the basis for why he went to the interview, because he said, I don't want to go now. I don't want to do it. They said you have no choice. He then said, well, if I have no choice, can I at least have a lawyer there? All right, suppose we disagree with that. Can you win? In other words, we don't buy the district court's finding. Let's assume you don't buy the district court's finding, that you can assume that the staff was acting at the behest of the Secret Service, and so when they told him he had to go to the interview and he could not have a lawyer, we attribute that to the agents. Suppose we don't buy that. For argument purposes only. Yeah, of course. Yes, and I'll tell you why. Because, first of all, for what I said in the Howes v. Fields, what the court said was the most important fact, and repeated, that was never done in this case. Second of all, he was surrounded in a small room, as the government agreed, in a small room by about six people in a chair. He was brought there. He was sat down. He's surrounded by them. They start, and as he, as the government in its cross-examination of Mr. Halford characterized it, the government itself said, they told you that they had questions with regard to the statements that you made. They told you, and he said, yes, that's correct. And they asked you about those statements, and he said, yes, that's correct. That was the government's own characterization of how it went about. So they didn't, according to the government's cross-examination, they didn't ask him, we want to make statements. They told him, we're going to talk to you about this, and they started asking him questions. So I think, even without that fact, it's a coercive atmosphere in which he's never told that it's voluntary, he has a right to leave, and according to him, that he's not under arrest either, because he said, I never even mentioned arrest. That was not mentioned. So the facts are so coercive at that point. A reasonable person would not have felt free to leave, let me put it that way, after being brought there. And the government goes on this agency theory, which is not really appropriate, and the fact that if the people at United Medical Center, because of what the agents told them, told that to Mr. Halford, they don't have to be agents. They're relaying, the government wants to get into a technical agency relationship. They're relaying what they're told by the agents, and that's perfectly reasonable, but even without a Judge Edwards, there's enough facts here in this case because he was not told he was free to leave. And the other two house factors that this Court had some question about in its original opinion, like why would Mr. Halford have thought that they were his ticket out of there or would influence him, even though a doctor had testified about it, this Court questioned that testimony. But now you have Mr. Halford's testimony, which is that I thought that I had to talk to him. And these are the other two factors in House v. Field, where he says, I thought they were my ticket out. I thought if I told them they saw that I was no danger, that I would be released from there automatically. And it's only after they started asking me questions about the guns that I realized things were different than I had been led to believe. So I think the answer is yes. Without that fact, it's still custodial interrogation, but I think that fact is perfectly reasonable. The government could have asked people at the original, the government could have brought this evidence out, but it never did. And I disagree with them about the burden of proof, although the district court found no matter what the burden of proof is, the defendant has, that it's been met in this case that he was in custody. So the long, simple answer to your question is yes, even without that fact, he was in custody. Do you know, are there any cases that deal with the situation when someone's already in state police custody and then federal agents show up and ask the state police if they can question? I have to think this happens not at all uncommonly. Yes, I think it's quite common, actually. And I'm saying this, my recollection is that there are a number of cases, and that it's because this was not in law enforcement custody. I get that. He was in state custody. Yes. But I think there's no, as I recall the cases on that, once a person's in custody, he's in the custody of the state police, so he's in custody. And all the federal agents do is come in and question him. He's still in custody, as I recall the cases. There's no break. The difference in these cases, in Howe's and in this case, is that he's not in custody of a law enforcement agency being questioned. He's in custody for a different reason. But if there's a law enforcement agency there questioning him and another law enforcement agency comes in because they say he's either another state or the federal come in and say, yes, he's a suspect in our crime too, that's just a continuation of the original questioning. So it would come down to whether there might be an issue about whether he had to be read his Miranda rights again. That's where I'm hesitating a little. I can't remember what the law is on that. Thank you. Thank you. Time left. Give you another two minutes. Thank you, Your Honor. If I may correct a couple of factual points, there's no testimony that there were locked doors that required a key card between Halford's room and the interview room. There was testimony that the officers had to be key carded in to the area where the interview room was located from the elevators. The interview room itself, the door was unlocked and open throughout the interview. The testimony that Mr. Kramer referenced about other people being in the room was, first of all, just at the beginning of the interview, and the officers never asked them to leave. But regardless, courts have routinely found that the presence of third parties ameliorates the concerns that animated Miranda. Miranda was concerned with incommunicado questioning by the police. So, for example, in Berkimer, one of the reasons the court found that a Terry stop was not Miranda custody was that there were third parties passersby. So if there were, in fact, doctors and nurses present for parts of the interview, that actually makes this look less like Miranda custody. Your position is that they weren't during the interview. They obviously brought him in during the interview time. I understood the record that they left or maybe filtered out. And there was a doctor who was sitting just around the corner who listened to the interview and offered Halford chocolate during the interview. So he knew that there were third parties listening in. Could he have gotten up and then walked out of the room? I believe he could have. There was no suggestion that he was unable to do that. But regardless, as we've pointed out, the cases say that in circumstances such as this, the question is more properly framed as whether he could ask to terminate the questioning and be returned to his room. Is that on the question on the first of the two house questions that is on the curtailment of movement, this issue that you're just discussing? Yes, that's how I understand it. And not on the coercive nature of the question. I understand the course of nature to be a more. It's already assumed before you get to that step that the person can't leave. Correct. The court made clear there is no the agents had no requirement that they do a further investigation of the pre interview conversations that Halford had. J.D.B. could have said that officers must ask a child his or her age, which would be a very simple thing to do. And the child could answer. But J.D.B. did not impose that requirement on officers. Rather, it said that the child's age to be properly considered as part of the Miranda custody analysis must be known to an officer or a reasonable officer should have known. So there is no duty that law enforcement have to do an investigation as to the pre interview circumstances. The transportation from one hospital to another, Judge Millett. There's no evidence in the record that there is a mandatory directive that people who are involuntarily committed be restrained. I'm not talking about a mandatory directive. I'm talking about common experience. But it sounds like that just wasn't put into the record here. There's no evidence in the record suggesting that it's a common experience. We don't know one way or the other whether they chose to do it because this person had made threatening statements, had threatened a doctor, or whether they always do it. And so to suggest that the officers must have assumed that, I don't think there's any facts in the record to make that a reasonable inference. The officers were aware of what statements. I'd assume, tell me if I'm wrong, that the officers were at least aware of the statements that had triggered the hospital notifying the Secret Service to investigate. Yes, they learned those. That he wanted to be shot by the Secret Service. About wanting to have his parents owned by the agency, wanting to be shot by the Secret Service, the threat to the doctor. I believe the record shows that the agents were aware of all of those things. I see that my time is up. We would ask that the district court's judgment be reversed. Thank you. We'll take the matter under scrutiny.
judges: Garland, Millett, Edwards